# EXHIBIT A

**DeNITTIS OSEFCHEN PRINCE, P.C.**
**Stephen P. DeNittis, Esq. (031981997)**
**5 Greentree Centre**
**525 Route 73 North, Suite 410**
**Marlton, New Jersey 08053**
**(856) 797-9951**
**Attorneys for Plaintiff**

| | |
|---|---|
| ANDREW ROSEMAN, on behalf of himself and all others similarly situated, | NEW JERSEY SUPERIOR COURT CAMDEN COUNTY |
| Plaintiff, | DOCKET NO. |
| v. | **CLASS ACTION COMPLAINT** |
| BAYER HEALTHCARE LLC and MERCK & CO., INC., | |
| Defendants. | |

Plaintiff Andrew Roseman, a New Jersey citizen, brings this class action lawsuit, under New Jersey law, against New Jersey Defendants Bayer Healthcare LLC and Merck & Co., Inc. (collectively "Defendants"), on behalf of himself and all other similarly-situated New Jersey citizens who purchased Coppertone Sport High Performance SPF 30 sunscreen spray and/or lotion, and alleges as follows:

## NATURE OF THE ACTION

1.      Consumers, like Plaintiff and the putative class, buy sunscreen to prevent sunburns and other harmful health effects caused by exposure to UV radiation, including but not limited to skin cancer and early skin aging.  Sunscreen prevents burning and decreases skin's exposure to UV radiation by absorbing UV radiation on the skin or by reflecting or scattering part or all of the UV radiation away from the skin.

1

2.      Sun Protection Factor ("SPF") informs the consumer of the level of sunburn protection provided by the sunscreen. A sunscreen with a higher SPF, such as SPF 30, filters out more UV radiation and provides more protection as compared to a sunscreen with a lower SPF. The SPF of a sunscreen is required to be clearly stated on the sunscreen's label.

3.      This is a mislabeling case regarding two sunscreens manufactured by Defendants – Coppertone Sport High Performance SPF 30 sunscreen spray and lotion – that Defendants labeled, marketed, advertised, and sold as "SPF 30," when in fact they were not. Plaintiff's claims arise solely out of Defendants' misrepresentation on the label of each and every bottle of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion that the sunscreen contained therein was "SPF 30."

4.      Plaintiff is one of the thousands of New Jersey consumers who have purchased Coppertone Sport High Performance SPF 30 sunscreen spray and lotion based on the advertised SPF number. Consumers, like Plaintiff, reasonably expect that a sunscreen bottle labeled "SPF 30" will actually contain a sunscreen with a true SPF of "30," and not provide a significantly lower amount of protection.

5.      Plaintiff brings this putative class action seeking damages sustained as a direct and proximate result of Defendants' violations of New Jersey state law as outlined in greater detail herein, in connection with Defendants' marketing and sale of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion. Plaintiff and putative class members have been, and continue to be, injured by Defendants' pattern and practice of placing into the stream of commerce sunscreen products containing a false SPF number, and largely inflated UV protection numbers, which Defendants manufactured, distributed, and sold.

2

6.      Defendants currently or have in the past tested, manufactured, labeled, distributed, advertised, marketed, produced, and sold sunscreen products under the brand name "Coppertone," including but not limited to Coppertone Sport High Performance SPF 30 sunscreen spray and lotion.

7.      Defendants have known, or should have known, for years that Coppertone Sport High Performance SPF 30 sunscreen spray and lotion contains less UV protection, and has a lower SPF, than Defendants advertised and stated on the products' label, causing Plaintiff and class members to rely upon, and to purchase products that contain, a false and significantly inflated SPF number.

8.      All claims in this matter arise from the identical, false, written affirmative statements on the product label as outlined in detail herein – *i.e.*, that Coppertone Sport High Performance SPF 30 sunscreen spray and lotion were "SPF 30" when in fact they were not.

9.      Defendants' statements are false and misleading to a reasonable consumer because Coppertone Sport High Performance SPF 30 sunscreen spray and lotion does not contain the advertised level of SPF.  The statements are likely to deceive, and have in fact deceived, the public.

10.     With notice and knowledge of their material misrepresentations or omissions, Defendants have not offered to compensate their customers to remedy their damages.

11.     Had Plaintiff and members of the putative class known that Coppertone Sport High Performance SPF 30 sunscreen spray and lotion contained less UV protection than Defendants advertise, Plaintiff and members of the putative class would not have purchased the sunscreen or relied upon it to protect them from UV radiation.

12.     As a direct and proximate result of Defendants' deceptive acts and practices in connection with their manufacturing, labeling, and sale of Coppertone Sport High Performance

3

SPF 30 sunscreen spray and lotion, Plaintiff and members of the putative class have sustained economic injury by paying for a falsely advertised product and being deprived of the full intended use of their purchased sunscreen.

13.     Plaintiff seeks damages and equitable remedies under New Jersey statutory and common law claims for himself and all members of the putative class of New Jersey citizens. Identified definitively below, the putative class is comprised of New Jersey consumers who purchased Defendants' Coppertone Sport High Performance SPF 30 sunscreen spray or lotion.

## JURISDICTION & VENUE

14.     Jurisdiction over this matter in the New Jersey Superior Court is proper because all claims raised in this matter arise exclusively under New Jersey law and because Plaintiff, Defendants, and all proposed class members are citizens of New Jersey.

15.     This matter is properly venued in Camden County because Plaintiff is a resident of Camden County, and because Defendants are regularly conduct business in Camden County.

16.     By contrast, no United States District Court has subject matter jurisdiction to hear this case because it does not raise or involve any federal question and all parties and proposed class members are citizens of New Jersey; thus, there is no minimal diversity.

## PARTIES

17.     Plaintiff Andrew Roseman is a citizen of New Jersey who resides in Voorhees, Camden County, New Jersey.   Plaintiff Roseman has purchased Coppertone Sport High Performance SPF 30 sunscreen spray and lotion on numerous occasions, including most recently on August 13, 2017, when he purchased a 6 oz. bottle of Coppertone Sport High Performance SPF 30 sunscreen spray from Rite Aid Store #10493 located at 6701 Ventnor Avenue, Ventnor City, New Jersey 08406.

18.     Defendant Bayer Healthcare LLC is a Delaware limited liability company with its headquarters and principal place of business located at 100 Bayer Boulevard, Whippany, New Jersey, 07981-0915.  Thus, Defendant Bayer Healthcare LLC is a citizen of Delaware and New Jersey.  Defendant Bayer Healthcare LLC is licensed to and does in fact conduct business throughout the United States, including New Jersey.  Defendant Bayer Healthcare LLC manufactures, markets, and sells personal care products, including Coppertone sunscreen and specifically the Coppertone Sport High Performance SPF 30 sunscreen spray and lotion that is the subject of this complaint, to consumers in New Jersey and throughout the United States.

19.     Defendant Merck & Co., Inc. is a New Jersey for-profit corporation with its headquarters and principal place of business located at 2000 Galloping Hill Road, Kenilworth, New Jersey 07033.  Thus, Defendant Merck & Co., Inc. is a citizen of New Jersey.  Defendant Merck & Co., Inc. is licensed to and does in fact conduct business throughout the United States, including New Jersey.  At times relevant to this Complaint, Defendant Merck & Co., Inc. manufactured, marketed, and sold personal care products, including Coppertone sunscreen and specifically the Coppertone Sport High Performance SPF 30 sunscreen spray and lotion that is the subject of this complaint, to consumers in New Jersey and throughout the United States.

20.     On October 1, 2014, Bayer A.G., the parent company of Defendant Bayer Healthcare LLC, completed the acquisition of Defendant Merck & Co., Inc.'s consumer care business, which included the entire Coppertone product line and specifically the Coppertone Sport High Performance SPF 30 sunscreen spray and lotion that are the subject of this complaint, for a purchase price of $14.2 billion dollars.

21.     From November 2, 2011 to October 1, 2014, Defendant Merck & Co., Inc. tested, manufactured, distributed, advertised, labeled, and sold Coppertone Sport High Performance SPF

5

30 sunscreen spray and lotion, and determined that each container of the sunscreen spray and lotion would state "SPF 30" on the uniformly-worded product label.

22.     From October 1, 2014 to the present, Defendant Bayer Healthcare LLC tested, manufactured, distributed, advertised, labeled, and sold Coppertone Sport High Performance SPF 30 sunscreen spray and lotion, and determined that each container of the sunscreen spray and lotion would state "SPF 30" on the uniformly-worded product label.

23.     The term "Defendants," as used herein, relates to each individual Defendant during the time period it was responsible for testing, manufacturing, distributing, advertising, labeling, and selling Coppertone Sport High Performance SPF 30 sunscreen spray and lotion.

24.     It is specifically alleged, upon information and belief, that the formulation and manufacturing processes regarding Defendants' Coppertone Sport High Performance SPF 30 sunscreen spray and lotion remained substantially unchanged throughout the entire class period.

## STATEMENT OF FACTS

### A. Coppertone Sport High Performance SPF 30 Sunscreen Spray and Lotion

25.     Coppertone Sport High Performance SPF 30 sunscreen spray and lotion is and/or was manufactured, labeled, sold, and distributed by Defendants at all times relevant to this complaint.

26.     Specifically, Coppertone Sport High Performance SPF 30 sunscreen spray and lotion – indeed, all Coppertone sunscreen as well as other Coppertone products – was manufactured, labeled, sold, and distributed by Defendant Merck & Co., Inc. prior to October 1, 2014, and by Bayer Healthcare LLC as of October 1, 2014 and thereafter.

6

27.    Coppertone's website, which Defendant Bayer Healthcare LLC currently maintains, states that Coppertone Sport High Performance SPF 30 sunscreen spray is available in 2 oz. and 6 oz. spray bottles, and provides "[p]hotostable, broad spectrum UVA/UVB protection."[1]

28.    Coppertone's website further states that Coppertone Sport High Performance SPF 30 sunscreen lotion is available in 3 oz. and 7 oz. bottles, and also provides "[p]hotostable, broad spectrum UVA/UVB protection."[2]

29.    Coppertone Sport High Performance SPF 30 sunscreen spray and lotion is, and was throughout the class period, widely available throughout New Jersey in hundreds of online and physical retail stores, including but not limited to Amazon.com, Walmart, Target, Kmart, Rite Aid, Walgreens, CVS, Jet.com, Sam's Club, BJ's Wholesale, and eBay.

30.    SPF – which stands for Sun Protection Factor – is a standardized rating system for measuring the fraction of sunburn-producing UV rays that reach the skin, which is based on objective evidence and standardized protocols.

31.    The SPF number stands for the approximate measure of time a person who has applied the sunscreen can stay out in the sun without getting burned, compared to the amount of time a person with no protection will get burned in similar conditions.

32.    Thus, SPF 30 will allow a person to stay in the sun 30 times longer without burning than if that person were wearing no protection at all.

33.    The Coppertone website acknowledges the importance of SPF in selecting, purchasing, and using sunscreen, recommending that consumers "[c]hoose a broad spectrum sunscreen with an SPF of 30 or more."[3]  Further, among its various "TIPS FOR BUYING

---

[1] https://www.coppertone.com/products/sport/spray/sport/ (last accessed on Oct. 12, 2017).
[2] https://www.coppertone.com/products/sport/lotion/lotion/ (last accessed on Oct. 12, 2017).
[3] https://www.coppertone.com/sunfacts/sunsmarttools/ (last accessed Oct. 12, 2017) (emphasis added).

SUNSCREEN," the Coppertone website touts, "Many dermatologists recommend using a product with <u>minimum SPF 30</u>…."[4]

34.    Indeed, the Coppertone website claims that an SPF 30 sunscreen "can help protect you from approximately 97% of the sun's harmful rays."[5]

## B. <u>Defendants' Uniform Written Misrepresentations</u>

35.    Since the initial offering of Coppertone Sport High Performance SPF 30 sunscreen spray, each and every bottle has borne a uniformly-worded claim in large letters on its front label that the product is "SPF 30."  <u>See</u> Figure 1, below.

**Figure 1**



---

[4] https://www.coppertone.com/sunfacts/whatispf/ (last accessed Oct. 12, 2017) (emphasis added).
[5] https://www.coppertone.com/sunfacts/whatispf/ (last accessed Oct. 12, 2017).

36.     Similarly, since the initial offering of Coppertone Sport High Performance SPF 30 sunscreen lotion, each and every bottle has borne a uniformly-worded claim in large letters on its front label that the product is "SPF 30."  <u>See</u> Figure 2, below.

**<u>Figure 2</u>**



37.     In actuality, rigorous scientific testing has revealed that Coppertone Sport High Performance SPF 30 sunscreen spray and lotion does <u>not</u> provide an SPF of 30.

38.     Such testing includes, but is not limited to, testing conducted by the noted consumer protection periodical *Consumer Reports*, which reported in July of 2017 that its own testing had

9

revealed that Coppertone Sport High Performance SPF 30 sunscreen spray had an actual SPF that was lower than the claimed SPF of 30. Specifically, Consumer Reports rated Coppertone Sport High Performance SPF 30 sunscreen spray's "Variation from SPF" as "Poor" – meaning that its actual SPF was "Below 50% [of the] labeled SPF" – and gave it an "Overall Score" of just 40 out of 100.

39.     In addition, Plaintiff conducted his own independent testing of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion, utilizing the methodology for SPF testing mandated by the FDA.

40.     The independent testing performed by Plaintiff was conducted in compliance with all FDA testing methods embodied in FDA Final Rule, 21 CFR Parts 201 and 310, Federal Register/Vol 76, No 117/Friday, June 17, 2011/Rules and Regulations, including 21 CFR 201.327.

41.     The results of the independent testing conducted by Plaintiff were consistent with the *Consumer Reports* test results and confirmed that Coppertone Sport High Performance SPF 30 sunscreen spray had an actual SPF substantially lower than the claimed "SPF 30."

42.     Plaintiff's independent testing also revealed that Coppertone Sport High Performance SPF 30 sunscreen lotion had an actual SPF substantially lower than the claimed "SPF 30."

43.     Specifically, in August of 2017, Plaintiff sent samples of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion to Clinical Research Laboratories, LLC ("CRL"), a laboratory located in Piscataway, New Jersey, for independent testing of the products' SPF.

44.     That testing concluded that Coppertone Sport High Performance SPF 30 sunscreen spray, despite being clearly labeled as "SPF 30," contained an average SPF of only 13.9.

45.     Plaintiff's testing further concluded that Coppertone Sport High Performance SPF 30 sunscreen lotion, despite being clearly labeled as "SPF 30," contained an average <u>SPF of only 14.8</u>.

46.     An SPF of 13.9 and an SPF of 14.8 offer significantly less sunscreen protection than an SPF of 30.

47.     SPFs of 13.9 and 14.8 are considered low levels of sunscreen protection, allowing users to remain in the sun without damage for a significantly shorter period than an SPF 30 would allow.

48.     In fact, the Coppertone Sport High Performance SPF 30 sunscreen spray and lotion product labels themselves caution against using sunscreens with an SPF value below 15, stating: "Sun Protection Measures.  Spending time in the sun increases your risk of skin cancer and early skin aging.  To decrease this risk, <u>regularly use a sunscreen with a Broad Spectrum SPF value of 15 or higher</u> …." <u>See</u> Reverse Labels of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion (emphasis added).

49.     Moreover, the Coppertone website repeatedly recommends using a sunscreen "<u>with an SPF of 30 or more</u>," [6] and proclaims that this endorsement is echoed by "[m]any dermatologists."[7]

50.     Notwithstanding these admonitions, the Coppertone Sport High Performance sunscreen spray and lotion – despite explicitly claiming to have an SPF of 30 – do not actually meet that recommended level of protection.  Worse, with a true SPF of only 13.9 and 14.8, the sunscreens do not even meet the minimum SPF value of 15 prescribed by their own labels, thereby subjecting users – to according to those labels – to an "increase[d] … risk of skin cancer and early

---

[6] https://www.coppertone.com/sunfacts/sunsmarttools/ (last accessed Oct. 12, 2017).
[7] https://www.coppertone.com/sunfacts/whatispf/ (last accessed Oct. 12, 2017).

11

skin aging," not to mention sunburns. The avoidance of these injuries is the only reason that consumers, including Plaintiff and the class, purchase Coppertone sunscreen.

51. Defendants, as current or former developers, manufacturers, and exclusive sellers and distributors of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion, have been aware since the products' inception that their true SPF was much lower than 30.

52. Indeed, Defendants tested Coppertone Sport High Performance SPF 30 sunscreen spray and lotion prior to the products being offered for sale.

53. Specifically, the Coppertone website touts a "commit[ment] to providing consumers with innovative, quality and safe sun care products based on science, rigorous testing and high standards." Coppertone products purportedly "are backed by science, real-world testing, and clinically relevant data," in part "so consumers can feel confident about the sunscreen they purchase." The Coppertone website further asserts: "Because we're committed to quality, excellence, innovation and truth in labeling, our products must pass a rigorous scientific testing process – one that goes above and beyond what the FDA requires – before it's on your favorite store shelf."[8] Such testing necessarily would have made Defendants aware that their Coppertone Sport High Performance SPF 30 sunscreen spray and lotion do not have an SPF rating of 30, as claimed on the products' labels.

54. Despite this, Defendants purposely claimed a higher SPF of 30 in order to induce the false belief in consumers that they were purchasing a product which provided a high level of SPF – "sun protection factor."

55. Defendants have been notified of the false advertisement but have not remedied the problem.

---

[8] https://www.coppertone.com/sunfacts/scienceandtesting/ (last accessed Oct. 12, 2017).

56.     At no time did Defendants advise either Plaintiff or putative class members that the sunscreen contained less UV protection than Defendants advertised.

57.     Plaintiff and class members purchased the sunscreen with no reason to suspect or know that the sunscreen contained less UV protection than Defendants advertised and expressly stated in writing on the product label.

58.     Defendants possessed specialized knowledge regarding the data and information concerning the chemical formula of the sunscreen which Plaintiff and class members could not and did not review.

59.     Indeed, Coppertone Sport High Performance SPF 30 sunscreen spray and lotion are credence goods because their properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase and such properties and benefits are made known to consumers only through the information provided on the label by the products' manufacturers and distributors.  See Richard A. Posner, *An Economic Approach to the Law of Evidence*, 51 STAN. L. REV. 1477, 1489 (1999) ("A good is a credence good if the consumer cannot readily determine its quality by inspection or even use, so that he has to take its quality 'on faith.'").

60.     In purchasing Coppertone Sport High Performance SPF 30 sunscreen spray and lotion, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the written statements on the products as accurate.

61.     Had Plaintiff known that the actual SPF rating of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion was substantially lower than what was stated on their product labels, Plaintiff would not have purchased either product.

62.     Alternatively, had Plaintiff known that the actual SPF rating of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion was substantially lower than what was stated on their product labels, Plaintiff would not have paid as much for either product.

63.     As the direct and proximate result of Defendants' false and misleading statements and omissions, Plaintiff and class members have suffered economic injury by being deprived of the full intended use of the purchased products and have been deprived of the benefit of the bargain they were promised by Defendants.

64.     By marketing, selling, and distributing Coppertone Sport High Performance SPF 30 sunscreen spray and lotion to purchasers in New Jersey, Defendants made actionable statements that the sunscreen contained the advertised UV protection and at all times failed to disclose that Coppertone Sport High Performance SPF 30 sunscreen spray and lotion did not in fact have an SPF of 30.

65.     Defendants engaged in the above-described actionable statements, omissions, and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression, and omissions.

66.     Alternatively, Defendants were reckless in not knowing that these representations were false and misleading at the time they were made.

67.     As the testers, distributers, marketers, producers, manufacturers, and sellers of the products, Defendants possessed specialized knowledge regarding the data and information concerning the chemical formula of the sunscreen which Plaintiff and the class members could not and did not review.

14

68.    All of Plaintiff's state law claims are based on misleading statements that violate FDA regulations. Such claims do not seek to impose any additional or different obligations beyond those already required by such FDA regulations.

69.    Such parallel state claims alleging affirmative violations of FDA regulations are expressly permitted by 21 U.S.C. §343-1(a).

70.    Further, Plaintiff's claims arise, <u>inter alia</u>, from "front of the box" statements and symbols which are not regulated by the Nutrition Labeling and Education Act.

## **CLASS ALLEGATIONS**

71.    Plaintiff repeats and realleges each allegation above as if set forth herein in full.

72.    Plaintiff brings this action as a class action pursuant to <u>R</u>. 4:32-1(b)(2) and (b)(3), seeking damages, statutory penalties, and injunctive relief under New Jersey state law on behalf of himself and all members of the following proposed class of New Jersey citizens:

> **All New Jersey citizens who purchased Coppertone Sport High Performance SPF 30 sunscreen spray or lotion in New Jersey from November 2, 2011 to the present.**

73.    Excluded from the class are Defendants, their affiliates, employees, officers and directors; persons or entities that purchased the sunscreen for purposes of resale; and the Judge(s) assigned to this case.

74.    Plaintiff reserves the right to amend or modify the proposed class definition in connection with a motion for class certification or as warranted by discovery.

75.    This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria set forth in <u>R</u>. 4:32-1(b)(2) and (b)(3).

76.    The members of the class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

77.     Upon information and belief, the proposed class is composed of at least 10,000 persons.

78.     No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between class members and Defendants.

79.     Rather, all claims in this matter arise from the identical, false, written affirmative statements on the product labels as outlined in detail herein.

80.     There are common questions of law and fact affecting the rights of all class members, including, inter alia, the following:

- The actual SPF of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion;

- Whether Defendants' act in placing a uniform written statement on the label of the products, stating "SPF 30," was a false, affirmative statement of fact;

- Whether each Defendant was aware that Coppertone Sport High Performance SPF 30 sunscreen spray and lotion had an SPF substantially lower than 30; and

- Whether Plaintiff and members of the Class suffered damages and the appropriate measure of that loss.

81.     Plaintiff is a member of the class he seeks to represent.

82.     The claims of Plaintiff are not only typical of all class members, they are identical.

83.     All claims of Plaintiff and the class arise from the same identical, false, written statement of affirmative fact on the Coppertone Sport High Performance SPF 30 sunscreen spray and lotion labels as described herein.

84.     All claims of Plaintiff and the class are based on the same legal theories.

85.     Plaintiff has no interest antagonistic to, or in conflict with, the class.

16

86.     Plaintiff will thoroughly and adequately protect the interests of the class he seeks to represent, having retained qualified and competent legal counsel to represent himself and the class.

87.     Defendants have acted and refused to act on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

88.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

89.     A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, <u>inter</u> <u>alia</u>, the damages suffered by each class member were less than $15 per bottle purchased and, as such, individual actions are not economically feasible.

90.     Common questions will predominate, and there will be no unusual manageability issues.

## COUNT I

### BREACH OF WARRANTY

91.     Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

92.     Defendants sold the Coppertone Sport High Performance SPF 30 sunscreen spray and lotion in their regular course of business.   Plaintiff and the class members purchased Coppertone Sport High Performance SPF 30 sunscreen spray or lotion.

93.     Defendants made promises and representations in an express warranty provided to all consumers, namely that Coppertone Sport High Performance SPF 30 sunscreen spray and lotion had an SPF of 30, which became the basis of the bargain between Defendants and Plaintiff and each class member.

17

94.     Defendants gave these express warranties to Plaintiff and each class member in written form on the labels of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion.

95.     Defendants' written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty.

96.     Defendants breached the warranty because the uniform written statement on each container of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion, claiming an SPF of 30, is false, and Coppertone Sport High Performance SPF 30 sunscreen spray and lotion did not contain the properties Defendants represented.

97.     The false SPF information provided on the labels was false when the sale took place and was undiscoverable to Plaintiff and the class members at the time of purchase.

98.     All conditions precedent to seeking liability under this claim for breach of express and implied warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the goods at issue.  Defendants had actual and/or constructive notice of the false labeling information and to date have taken no action to remedy their breaches of express and implied warranty.

99.     Defendants were on notice of their breaches of express and implied warranty by virtue of the *Consumer Reports* article referenced herein, as well as numerous news stories reporting the fact that Coppertone Sport High Performance SPF 30 sunscreen spray had an actual SPF substantially lower than 30.

100.     Further, Defendants previously knew or should have known of the falsity of the labels on Coppertone Sport High Performance SPF 30 sunscreen spray and lotion, due to, inter alia, Defendants' testing of the products.

101.    Defendants have refused to remedy such breaches.

102.    By placing Coppertone Sport High Performance SPF 30 sunscreen spray and lotion in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also impliedly warrantied to Plaintiff and class members that the sunscreen was accurately labeled in conformance with the law.

103.    Defendants' breaches of warranty have caused Plaintiff and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid.  As a direct and proximate result of Defendants' breaches of warranty, Plaintiff and class members have suffered damages and continue to suffer damages, including economic damages in terms of the difference between the value of the product as promised and the value of the product as delivered.

104.    As a result of Defendants' breach of these warranties, Plaintiff and class members are entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and/or other relief as deemed appropriate, in an amount sufficient to compensate them for not receiving the benefit of their bargain.

## COUNT II

### BREACH OF IMPLIED CONTRACT THROUGH VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

105.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

106.    By operation of law, there existed an implied contract for the sale of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion between Defendants and Plaintiff and each class member who purchased either product.

107.    By operation of law, there existed an implied duty of good faith and fair dealing in each such contract.

108.    By the acts alleged herein, Defendants have violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendants and each class member.

109.    As a result of that breach, Plaintiff and each class member suffered damages.

## COUNT III

### NEW JERSEY UNIFORM DECLARATORY JUDGMENT ACT
### N.J.S.A. § 2A:16-51, et seq.

110.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

111.    Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole within the meaning of R. 4:32-1(b)(2).

112.    Defendants have refused to correct and/or are continuing to engage in the conduct alleged herein.

113.    Plaintiff and the class members have a significant interest in this matter, in that each has been and/or will be subjected to the unlawful policy alleged herein.

114.    Plaintiff would purchase Coppertone Sport High Performance SPF 30 sunscreen spray and lotion again in the future if he could be assured that the products were accurately labeled as to their SPF rating and/or that the products conformed to the SPF rating stated on the product packaging.  Plaintiff is currently prevented from doing so, however, owing to the continuing refusal of Defendants to accurately label the SPF of the products.

115.    Based on the foregoing, a justifiable controversy is presented in this case, rendering declaratory judgment and injunctive relief appropriate.

116.   Plaintiff, on behalf of himself and putative Class members, seeks a court order for declarative and injunctive relief:

(a)   Declaring that the label and advertising on Coppertone Sport High Performance SPF 30 sunscreen spray and lotion contained false and misleading information regarding its level of SPF protection;

(b)   Declaring that Defendants knew or should have known of the false information they provided to Plaintiff and class members;

(c)   Enjoining Defendants from claiming that the current formulation of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion has an SPF of 30;

(d)   Directing Defendants to remove from the stream of commerce all falsely labeled Coppertone Sport High Performance SPF 30 sunscreen spray and lotion containers and/or re-label such containers with accurate information regarding SPF; and

(e)   Directing Defendants to institute a court-administered corrective notice and/or advertising campaign to inform and educate consumers about the fact that the labels of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion falsely inflated the products' SPF level and to inform them about the true SPF content thereof.

## COUNT IV

### UNJUST ENRICHMENT/QUASI-CONTRACT/DISGORGEMENT/RESTITUTION

111.   Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

112.   Plaintiff pleads this claim for relief in the alternative to the contract claims set forth above.

113.   Plaintiff and the class members have conferred substantial benefits on Defendants by purchasing Coppertone Sport High Performance SPF 30 sunscreen spray and lotion, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

114.    Defendants either knew or should have known that the payments rendered by Plaintiff and the class members were given and received with the expectation that the product would be as represented and warranted.  For Defendants to retain the benefit of the payments under these circumstances is inequitable.

115.    Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of Defendants' Coppertone Sport High Performance SPF 30 sunscreen spray and lotion, including representing that the products had an SPF of 30, Defendants each reaped benefits, which resulted in each Defendant wrongfully receiving profits.

116.    Equity demands disgorgement of Defendants' ill-gotten gains.  Defendants will be unjustly enriched unless Defendants are ordered to disgorge those profits for the benefit of Plaintiff and the class members.

117.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiff and the class members are entitled to restitution from Defendants and institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants through this inequitable conduct.

## COUNT V

### NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1, *et seq*.

117.    Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

118.    The New Jersey Consumer Fraud Act ("NJ CFA") clearly applies to all sales of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion in New Jersey.

22

119.    The NJ CFA was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services. See Marascio v. Campanella, 298 N.J. Super. 491, 500 (App. Div. 1997).

120.    The NJ CFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes. See Furst v. Einstein Moomjy, 182 N.J. 1, 11-12 (2004) ("The Consumer Fraud Act is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public.").

121.    With regard to the NJ CFA, "[t]he available legislative history demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation." New Mea Const. Corp. v. Harper, 203 N.J. Super. 315, 319 (App. Div. 1986).

122.    For this reason, the "history of the Act is one of constant expansion of consumer protection." Kavky v. Herbalife Int'l of Am., 359 N.J. Super. 497, 504 (App. Div. 2003).

123.    N.J.S.A. 56:8-2 of the NJ CFA prohibits "unlawful practices," which are defined as:

> The act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person has in fact been misled, deceived or damaged thereby.

124.    Coppertone Sport High Performance SPF 30 sunscreen spray and lotion are "credence good[s]," because their properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase and such properties and benefits are made known to consumers only through the information provided on the labels by the products' manufacturer and distributor. See Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496, 522 (2010).

125.    The New Jersey Supreme Court in <u>Lee v. Carter-Reed Co., L.L.C.</u>, 203 N.J. 496, 522 (2010), spoke regarding the relationship between dishonest product labeling and credence goods, stating: "A rational consumer does not randomly take a bottle of pills off a shelf and then purchase it without reading the packaging and labeling."

126.    In order to state a cause of action under the NJ CFA, a plaintiff does not need to show reliance by the consumer. <u>See</u> <u>Varacallo v. Mass. Mut. Life Ins. Co.</u>, 332 N.J. Super. 31, 43, 752 A.2d 807 (App. Div. 2000); <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 607-608, 691 A.2d 350 (1997) (holding that reliance is not required in suits under the NJ CFA because liability results from "misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby'").

127.    Rather, the NJ CFA requires merely a causal nexus between the false statement and the purchase, not actual reliance. <u>See</u> <u>Lee v. Carter-Reed Co., L.L.C.</u>, 203 N.J. 496, 522 (2010) ("It bears repeating that the CFA does not require proof of reliance, but only a causal connection between the unlawful practice and ascertainable loss.").

128.    The purchase of a credence good, where the label on the product contains misrepresentations of material fact, by itself, establishes a presumption of a causal nexus under the NJ CFA. <u>See</u> <u>Lee v. Carter-Reed Co., L.L.C.</u>, 203 N.J. 496 (2010).

129.    By the acts alleged herein, Defendants have violated the NJ CFA.

130.    Specifically, Defendants have made identical, false, written misstatements of affirmative fact to Plaintiff and each class member on the label of each container of Coppertone Sport High Performance SPF 30 sunscreen spray and lotion sold in New Jersey, as previously described in detail herein – <u>i.e.</u>, that the products had an "SPF" of "30."

131.     These statements were false when made and Defendants knew that these statements were false when made.

132.     As a result of these false, written, affirmative misstatements of material fact, Plaintiff and each class member has suffered an ascertainable loss.

133.     Specifically, Plaintiff and each class member have been deprived of the benefit of the promised bargain – a valid measure of "ascertainable loss" under the NJ CFA according to the New Jersey Supreme Court and New Jersey Appellate Division – in that Plaintiff and each class member received something less than what was represented by Defendants on their products' label.

## COUNT VI

### NEW JERSEY TRUTH IN CONSUMER CONTRACT, WARRANTY AND NOTICE ACT N.J.S.A. 56:12-14, *et seq.*

134.     Plaintiff repeats and incorporates by reference all preceding paragraphs as if fully set forth herein.

135.     Plaintiff and each the class member are "consumers" within the meaning of N.J.S.A. 56:12-15 and 16.

136.     Defendants are "sellers" within the meaning of N.J.S.A. 56:12-15 and 16.

137.     The product labels on the Coppertone Sport High Performance SPF 30 sunscreen spray and lotion is both a consumer "notice" and "warranty" within the meaning of N.J.S.A. 56:12-15 and 16.

138.     By the acts alleged in detail herein, Defendants have violated N.J.S.A. 56:12-15 and 16 because, in the course of Defendants' business, Defendants have displayed and/or offered written consumer notices and warranties to Plaintiff and each class member that contained provisions which violated their clearly established legal rights under New Jersey state law, within the meaning of N.J.S.A. 56:12-15 and 16.

139.    Specifically, the clearly established rights of Plaintiff and the class under state law include the right not to be subjected to unconscionable commercial practices and false written affirmative statements of fact in the sale of goods, as described herein, which acts are prohibited by the CFA, N.J.S.A. § 56:8-2.

140.    Pursuant to N.J.S.A. 56:12-17, this class complaint seeks a statutory penalty of $100 for each class member, as well as actual damages and attorney's fees and costs. See N.J.S.A. § 56:12-17, providing that a seller who violates the TCCWNA: "shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs." See also United Consumer Fin. Servs. Co. v. Carbo, 410 N.J. Super. 280, 310 (App. Div. 2009), affirming trial judge's decision to award the $100 statutory penalty to each class member under N.J.S.A. § 56:12-17 of TCCWNA, stating:

> [T]he $100 civil penalty is not unreasonably disproportionate when viewed in that context, whether it is considered with respect to an individual consumer or the 16,845 consumers whose contracts included the prohibited fee. We note that when assessing the constitutional reasonableness of punitive damage awards, courts are directed to consider and give 'substantial deference' to judgments made by the Legislature in fixing civil penalties. Nothing about the facts of this case or the numerosity of this class warrants a more searching evaluation of the reasonableness of awarding the civil penalty selected by the Legislature to each member of this class.

(internal citations omitted).

### **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests relief against Defendants as set forth below:

a.    Certify the proposed class and maintain this case as a class action pursuant to R. 4:32;

b.    Appoint Plaintiff as representative of the class;

c.    Appoint the undersigned as class counsel for the class;

26

d.  Enter an order for injunctive and declaratory relief as described herein;

e.  Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein and/or restitution, to include interest and pre-judgment interest;

f.  Award Plaintiff reasonable attorneys' fees and costs; and

g.  Grant such other and further legal and equitable relief as the court deems just and equitable.

## JURY TRIAL DEMANDED

Plaintiff demand a trial by jury on all issues so triable.

Dated:   November 3, 2017              BY:  _____

Stephen P. DeNittis
Joseph Osefchen
Shane T. Prince
**DeNITTIS OSEFCHEN PRINCE, PC**
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: 856-797-9951
Fax: 856-797-9978
Email: sdenittis@denittislaw.com

Janine Lee Pollack
**WOLF HALDENSTEIN**
  **ADLER FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: 212-545-4600
Fax: 212-686-0114
Email: pollack@whafh.com

27

Theodore B. Bell
Carl V. Malmstrom
**WOLF HALDENSTEIN
   ADLER FREEMAN & HERZ LLP**
70 W. Madison St., Suite 1400
Chicago, IL 60602
Telephone: 312-984-0000
Fax: 312-214-3110
tbell@whafh.com
malmstrom@whafh.com

*Counsel for Plaintiff and the Proposed
Class*

## CERTIFICATION PURSUANT TO R. 4:5-1

To the best of Plaintiff's knowledge, the matter in controversy is not related to any other currently pending action. No arbitration proceeding is pending or contemplated. There are no other parties known to Plaintiff at this time who should be joined in this action.

## CERTIFICATION PURSUANT TO N.J.S.A. 56:8-1 et seq.

The undersigned hereby certify that a copy of this complaint has been forwarded to the Attorney General of the State of New Jersey.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Stephen DeNittis is designated as trial counsel on this complaint.

DeNITTIS OSEFCHEN PRINCE, P.C.

BY: _____
Stephen P. DeNittis, Esq. (031981997)
5 Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
Tel.: (856) 797-9951
Fax: (856) 797-9978

Dated: November 3, 2017

Attorneys for Plaintiff and the Proposed Class