NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ANDREW ROSEMAN, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Civil No. 17-13308 (RBK/KMW) |
| v. | OPINION |
| BAYER HEALTHCARE LLC and MERCK & CO., Inc., | |
| Defendants. | |

**Kugler,** United States District Judge:

**THIS MATTER** comes before the Court upon Plaintiff Andrew Roseman's ("Plaintiff") Motion to Remand (Doc. No. 8), Defendant Merck & Co.'s ("Merck") Motion to Dismiss (Doc. No. 9), and Defendant Bayer Healthcare LLC's ("Bayer," collectively with Merck, "Defendants") Motion to Dismiss (Doc. No. 10). For the reasons set forth in the opinion below, Plaintiff's Motion to Remand is **GRANTED**, and Defendants' respective Motions to Dismiss are **DENIED AS MOOT**.

## I. BACKGROUND

This case is about sunscreen. Plaintiff is a New Jersey citizen who resides in Voorhees, New Jersey. (Compl. at 4). Bayer is a Delaware LLC with its headquarters and principal place of business located at 100 Bayer Boulevard, Whippany, New Jersey. (*Id.* at 5). Merck is a New Jersey for-profit corporation with its headquarters and principal place of business located at 2000

1

Galloping Hill Road, Kenilworth, New Jersey. (*Id.*). Defendants manufactured,[1] labeled, advertised, sold and distributed Coppertone Sport High Performance SPF 30 sunscreen spray and lotion ("Coppertone 30"). (Compl. at 2). Plaintiff bought Coppertone 30 and used it based on its purported Sun Protection Factor ("SPF") levels. (*Id.* at 3-4). SPF is a measurement which helps to inform consumers of the level of sunburn protection provided by the sunscreen—sunscreen with a higher SPF filters out more harmful ultraviolet ("UV") radiation and provides more protection compared to a sunscreen with a lower SPF. (*Id.*). Coppertone 30 conspicuously advertised its claimed SPF level—30—on the front of its bottles and containers. (Compl. at 8-9).

Plaintiff's allegations are relatively simple—Plaintiff alleges that Defendants manufactured, marketed, advertised, and sold Coppertone 30 as containing SPF 30 protection when in fact it contained a much lower SPF number. (*Id.* at 3). Plaintiff references tests by *Consumer Reports*,[2] Clinical Research Laboratories, LLC,[3] and his own independent testing to allegedly establish that Coppertone 30 contained an average SPF of between 13.9 and 14.8. (Compl. at 10-11). Plaintiff maintains that his testing "compli[ed] with all FDA testing methods embodied in FDA Final Rule, 21 CFR Parts 201 and 310, Federal Register/Vol 76, No 117/Friday, June 17, 2011/Rules and Regulations, including 21 CFR 201.327." (*Id.* at 10).

As a result, Plaintiff has brought claims on behalf of himself and all other similarly-situated New Jersey citizens who purchased Coppertone 30 from November 2, 2011 to the present. These claims are: Breach of Warranty (Count I); Breach of Implied Contract Through Violation of the Implied Covenant of Good Faith and Fair Dealing (Count II); New Jersey

---

[1] Merck manufactured, labeled, sold and distributed Coppertone Sport High Performance SPF 30 sunscreen spray and lotion ("Coppertone 30") prior to October 1, 2014. (Compl. at 5-6). Bayer did so thereafter. (*Id.* at 6).
[2] A nonprofit organization specializing in product testing and consumer-oriented research.
[3] A laboratory located in Piscataway, New Jersey. (Compl. at 10).

Uniform Declaratory Judgment Act, N.J.S.A. § 2A:16-51, *et seq.* (Count III); Unjust Enrichment/Quasi-Contract/Disgorgement/Restitution (Count IV); and the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* (Count V). Plaintiff's claims are exclusively New Jersey state law claims.

There are, though, some peculiar features of this case and Plaintiff's proposed class. As Defendants emphasize in their Opposition to Plaintiff's Motion to Remand, Plaintiff's counsel filed a nearly identical case in federal court in Illinois on behalf of a different named plaintiff. (Def. Opp. at 3; Torkelson Decl., Ex. A). In the Illinois case, the plaintiff seeks to represent a class consisting of "[a]ll persons who purchased" Coppertone 30 "in the United States from November 2, 2013 to the present, excluding from the class any New Jersey citizen who purchased the sunscreen spray in New Jersey." (Torkelson Decl. Ex. A, Par. 69). As such, Bayer has filed a motion to transfer the Northern District of Illinois case to this District to be consolidated with this action. (Def. Opp. at 5). The Illinois court has stayed that motion until the Motion to Remand at issue here is decided.

## II. STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action filed in state court to a federal court with original jurisdiction over the action. In all cases, however, the defendant bears the burden of showing that the federal court has jurisdiction to hear the case. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)). Generally, where the decision to remand is a close one, district courts are encouraged to err on the side of remanding the case back to state court. *See Abels*, 770 F.2d at 29 ("Because the lack of jurisdiction would make any decree in the case void and the continuation

3

of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand.").

Removal jurisdiction is appropriate in federal-question cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. That grant of power, however, is not self-executing—it was not until the Judiciary Act of 1875 that Congress gave the federal courts general federal-question jurisdiction. *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986). It is settled that removal on the basis of federal-question jurisdiction is generally subject to the well-pleaded complaint rule, which requires that the federal question justifying a federal court's jurisdiction appear on the face of the complaint. *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908). A complaint without a federal question presented on its face is beyond the power of a federal court to adjudicate, and a defendant may not circumvent this requirement by asserting a federal defense, such as preemption, to the complaint. "[I]t is now settled that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis in original). There is, however, another variety of federal "arising under" jurisdiction which the Supreme Court has recognized. In certain cases, federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005); *see Hopkins v. Walker*, 244 U.S. 486, 490-91 (1917). Put simply, a federal court may hear claims recognized under state law that nonetheless turn on "substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity" that a federal court may offer on such federal

4

issues. *Grable*, 545 U.S. at 312 (citing *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921)).

## III. ANALYSIS

Defendants make two arguments for this Court's jurisdiction over this case: (1) that we should reject Plaintiff's counsel's jurisdictional gerrymandering; and (2) Plaintiff's claims necessarily raise a disputed and substantial issue of federal law. We address these in turn.

### A. Defendant's Allegations Of Purported Jurisdictional Gerrymandering By Plaintiff's Counsel Do Not Mandate Federal Jurisdiction Over This Case.

Plaintiff's complaint artfully dances away from federal jurisdiction. Plaintiff does not dispute this: "[t]here is nothing wrong or improper with Plaintiff Roseman pleading his own complaint in a way that avoids federal subject matter jurisdiction." (Pl. Rep. at 2). But the well-pleaded complaint rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 428 U.S. at 392. It is well-established in this Circuit that a plaintiff may deliberately plead in such a way as to avoid federal subject-matter jurisdiction. *Pa. Nurses Ass'n v. Pa. State Educ. Ass'n*, 90 F.3d 797, 807 (3d Cir. 1996) ("[Plaintiff] may, by eschewing claims based on federal law, choose to have the cause heard in state court"); *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006) ("[A]s master of the case, the plaintiff may limit his claims"). That is what appears to have been done here.

This Court notes the obvious costs and issues for Defendants in litigating two parallel cases. The Court also notes Plaintiff's counsel's gamesmanship.[4] But we cannot gut the well-pleaded complaint rule and replace Plaintiff in his role as master of his own complaint just

---

[4] And Plaintiff's sidestepping of the Class Action Fairness Act, which is inapplicable to this case because of the lack of diversity between the parties.

5

because of potential concerns stemming from Plaintiff's counsel's position and corresponding incentives in both cases. The pleadings are deliberate. But Plaintiff, here, has exercised a well-established right. We cannot force possible compatriots in Illinois upon him involuntarily.

**B. Plaintiff's Claims Do Not Invoke Federal Subject Matter Jurisdiction.**

Plaintiff's complaint relies on alleged violations of federal standards: "[a]ll of Plaintiff's state law claims are based on misleading statements that violate FDA regulations." (Compl. at 15). Defendants maintain that because Plaintiff's complaint brings state-law claims that "rise or fall on the ability to prove violations of a federal duty," the complaint presents a federal issue. (Def. Opp. at 7 (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S.C. 1562, 1569 (2016))).

In such a state-law circumstance, federal-question jurisdiction also requires the federal issue be "actually disputed and substantial." *Grable*, 545 U.S. at 314. A federal issue is "disputed" when an "essential element" of a state-law claim is whether alleged conduct fell within the meaning of a federal law. *Id.* at 314-15. A federal issue is "substantial" if it indicates "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313. Defendants argue that both requirements are present here. They are incorrect.

In *Merrell Dow*, the Supreme Court held that an allegation that a drug was allegedly misbranded in violation of the United States Federal Food, Drug, and Cosmetic Act ("FDCA") did not by itself create federal-question jurisdiction. 478 U.S. at 805-07. Instead, it constituted "the presence of a federal issue in a state-created cause of action." *Id.* at 810 (citing *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 470 (1957) (dissenting opinion)). Importantly, the Court discussed the statute itself:

> The assumed congressional determination to preclude federal private remedies for violations of the FDCA is tantamount to a congressional conclusion that a claimed

6

violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction.

*Id.* at 814. While Defendants are correct in their assertion that the absence of a federal cause of action does not foreclose federal-question jurisdiction, the FDA-prescribed testing procedures are, in this instance, a federal standard of care in a state cause of action. *Grable*, 545 U.S. at 318; *Merrell Dow*, 478 U.S. at 810. The federal procedures to verify SPF and UV protection efficacy are mandatory for sunscreen manufacturers. But these procedures are but a part of Plaintiff's case. And, as *Grable* explained in its discussion of *Merrell Dow*, "exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues." 545 U.S. at 318. Our case is analogous. This is a state action with an embedded federal issue.[5] The federalized testing requirements do not, alone, mandate our exercise of jurisdiction. And, where the decision to remand is a close one, district courts are encouraged to err on the side of remanding the case back to state court. *Abels*, 770 F.2d at 29 ("[A]ll doubts should be resolved in favor of remand."). As such, this case must be remanded—despite the blatant inefficiencies arising from the parallel case in Illinois.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand is **GRANTED**, and Defendants' respective Motions to Dismiss are **DENIED AS MOOT**.

---

[5] We note that the federal issue in this case does not "justify resort to the experience, solicitude, and hope of uniformity" that a federal court may offer. *Grable*, 545 U.S. at 312 (citing *Smith*, 255 U.S. 180 (1921)). A state court will be equally well-positioned to determine whether the requisite testing was up to par. *See also Grable*, 545 U.S. at 321 (Thomas, J., concurring) ("Jurisdictional rules should be clear . . . trying to sort out which cases fall within the smaller *Smith* category may not be worth the effort it entails").

Dated:   05/11/2018                             s/Robert B. Kugler
                                                ROBERT B. KUGLER
                                                United State District Judge